IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WOLF BAY LODGE, INC. | * |
| | * |
|     Plaintiff | * |
| | * |
| vs. | *  CIVIL ACTION NO.: |
| | * |
| UNITED STATES OF AMERICA | * |
| | * |
|     Defendant | * |

## COMPLAINT

WOLF BAY LODGE, INC. ("Wolf Bay") brings this action against the United States pursuant to 26 U.S.C. § 7422, for a refund of internal revenue taxes totaling $902,053.95 (plus interest) owed to it (the "ERC refunds")– and wrongfully denied by the Internal Revenue Service ("IRS") – as Employee Retention Credits ("ERC") [1]. Under the Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 ("CARES Act") and Internal Revenue Code § 3134, which created the ERC, Plaintiff is entitled to ERC refunds for the tax periods ending June 30, 2020 ("Q2 2020"), September 30, 2020 ("Q3 2020"), December 31, 2020 ("Q4 2020"), March 31, 2021 ("Q1 2021"), and June 30, 2021 ("Q2 2021").

## NATURE OF ACTION

1. Plaintiff files this civil action under I.R.C. § 7422 for the recovery of employment taxes, including the refundable excess credit (together with statutory interest and any appropriate attorney fees), authorized to be paid to Plaintiff under I.R.C. § 3134 and the CARES Act, but wrongfully denied by the IRS. This Complaint is proper under 28 U.S.C. § 2401 and under I.R.C. §§ 6532 and 7422, as Plaintiff's ERC claims were duly filed more than 6 months prior to the filing

---

[1] Employee Retention Credits or ERC are also interchangeably referred to as Employee Retention Tax Credits or ERTC.

1

of this Complaint.[2]

## PARTIES

2.  Plaintiff Wolf Bay is a full-service restaurant and gift shop. Plaintiff's principal place of business is in Foley, Alabama.

3.  The Defendant is the United States of America.

## JURISDICTION AND VENUE

4.  Jurisdiction in this Court is proper under 28 U.S.C. §§ 1331, 1340, and 1346(a)(1), and under 26 U.S.C. (I.R.C.) § 7422.

5.  Venue in this Court is proper under 28 U.S.C. § 1402(a)(2) and 1391(e)(1), as Plaintiff's principal place of business is located in this judicial district.

6.  This Complaint is timely under 28 U.S.C. § 2401(a) and under I.R.C. §§ 6532(a)(1) and 7422(a) because Plaintiff filed a claim for its ERC refund with the Secretary more than six months prior to the date of filing this Complaint.

## THE EMPLOYEE RETENTION CREDIT

7.  Beginning in 2020, the COVID-19 virus created a global pandemic that swept through all fifty states and resulted in governmental orders to address the pandemic that disrupted the United States' local and national economies. Those orders formed a nexus of federal, state, and local government mandates that created a comprehensive regulatory scheme limiting commerce, travel, and group meetings with the objective to limit the spread of COVID- 19. The governmental response to that public health emergency involved historically unprecedented measures, including lock down orders, social distancing mandates, and forced business closures. The economic effects of those policies were profound. Deemed the "greatest threat to prosperity and well-being the US

---

[2] See Exhibit "A"-Plaintiff's 941X for Q2 2020, Q3 2020, Q4 2020, Q1 2021, and Q2 2021, and Form 2848 Power of Attorney that was attached to each 941X.

has encountered since the Great Depression[,]" the estimated cumulative financial costs of COVID-19 were forecast at $16 trillion.[3]

8. In response to the COVID-19 pandemic, the federal government enacted sweeping economic measures to assist American businesses and citizens, including the CARES Act, enacted in March 2020. Section 2301 of the CARES Act created the ERC.[4]

9. The ERC is a broad-based, fully refundable tax credit designed to stimulate economic recovery, support job retention, encourage business sustainability, and mitigate the impacts on U.S. businesses from the unprecedented challenges posed by the pandemic. Congress intended for the credit to be broadly applicable to help businesses survive a historic pandemic that disrupted the global economy. The credit is available to certain eligible employers for the last three quarters of 2020 and for the first three quarters of 2021.

10. The ERC is a payroll tax credit available to certain employers who qualify under the CARES Act. Employers file an amended quarterly payroll tax return (a 941X) with the IRS to claim the ERC credit.

**Threshold Requirement – 3 Ways to Qualify for an ERC**

11. An employer is eligible to claim an ERC if it carried on a trade or business during the quarter at issue and satisfies one of three prongs for eligibility: (1) significant declining gross

---

[3] Alvin Powell, *What might COVID cost the U.S.? Try $16 trillion*, The HARVARD GAZETTE, Nov. 10, 2020. https://news.harvard.edu/gazette/story/2020/11/what-might-covid-cost-the-u-s-experts-eye-16-trillion/.

[4] Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, §2301, 134 Stat 281 (March 27, 2020).

receipts; (2) full or partial suspension of operations due to government orders, or (3) recovery startup business[5]. CARES Act § 2301(c)(2); I.R.C. § 3134(c)(2).[6]

12. Plaintiff Wolf Bay duly claimed ERC credits for June 30, 2020 ("Q2 2020"), September 30, 2020 ("Q3 2020"), December 31, 2020 ("Q4 2020"), March 31, 2021 ("Q1 2021"), and June 30, 2021 ("Q2 2021"). The IRS has taken no action on Plaintiff's claims, which are the subject of this suit for refund, for more than six months.

**Declining Gross Receipts Test**

13. For any 2021 ERC quarter claimed under the declining gross receipts test, the employer is eligible to receive ERC if "the gross receipts . . . of such employer for such calendar quarter are less than 80 percent of the gross receipts of such employer for the same calendar quarter in calendar year 2019." 26 U.S.C. § 3134 (c)(2)(A)(ii)(II).[7] In other words, if the employer suffered a decline in gross receipts of greater than 20 percent for the claimed quarter in 2021, when compared to the same quarter in 2019, the employer is eligible to receive the ERC for that 2021 claimed quarter.

**Alternative Gross Receipts Test**

14. Additionally, for any quarter in 2021 for which the ERC is claimed, Congress provided an alternative way to determine whether the declining gross receipts test is met by the taxpayer employer. For this alternate test, a taxpayer may elect to use an

---

[5] Plaintiff is not a "recovery startup business" as defined under I.R.C.§3134(c)(2)(A)(ii)(III), and so it does not claim ERC credits thereunder, nor does it claim the credit under the significant decline in gross receipts prong.

[6] The current version of I.R.C. § 3134 became effective on November 15, 2021 and, as relevant here, is identical to the version of I.R.C. § 3134 in effect from March 11, 2021, to November 14, 2021, and to the version of the CARES Act in effect from January 1, 2021, to March 10, 2021. For ease of reference, this Complaint cites I.R.C. § 3134 when discussing 2021 ERC requirements.

[7] The percent decline in gross receipts for 2020 calendar quarters was more stringent and required a 50 percent decline in gross receipts when compared to the same quarter in 2019. CARES Act § 2301(c)(2)(B)(ii).

4

immediately preceding quarter's receipts to qualify, i.e. to show there was a 20 percent reduction in gross receipts qualifying it for the ERC in 2021.

15.     Specifically, § 207(d)(2) of the Coronavirus Response and Consolidated Appropriations Act of 2021 ("CAA")[8] added a provision that has been interpreted by the IRS to permit employers to calculate gross receipts using an *alternate preceding quarter* (rather than the quarter for which the ERC is claimed).

In Notice 2021-23, the IRS states:

> [S]ection 2301(c)(2)(B) of the CARES Act, as amended by section 207(d)(2) of the Relief Act, permits an employer to elect to use an alternative quarter to calculate gross receipts. Under this election, an employer may generally determine if the decline in gross receipts test is met for a calendar quarter in 2021 by comparing its gross receipts for the immediately preceding calendar quarter with those for the corresponding calendar quarter in 2019. . . .
>
> Accordingly, for the first calendar quarter of 2021, an employer may elect to use its gross receipts for the fourth calendar quarter of 2020 compared to those for the fourth calendar quarter of 2019 to determine if the decline in gross receipts test is met. . . .
>
> For the second calendar quarter of 2021, an employer may elect to use its gross receipts for the first calendar quarter of 2021 compared to those for the first calendar quarter of 2019 to determine if the decline in gross receipts test is met. . . .

*Guidance on the Employee Retention Credit under the CARES Act for the First and Second Calendar Quarters of 2021*, IRS Notice 2021-23.

16.     Likewise, for the third calendar quarter of 2021, an employer may elect to use its gross receipts for the second calendar quarter of 2021 compared to those for the second calendar quarter of 2019 to determine if the decline in gross receipts test is met.

---

[8] PL 116-260, December 27, 2020, 134 Stat 1182.

17. In other words, in practice, if a taxpayer qualifies under the gross receipts test for the first quarter of 2021, then under the alternative gross receipts test, the taxpayer automatically qualifies for a ERC for the second quarter in 2021. This is true regardless of whether there was any decline in gross receipts at all during the second quarter of 2021.

### The Suspension Test

18. An employer can also qualify as an eligible employer to receive ERC using the suspension test. Under this second prong for determining eligibility, an employer is eligible to claim ERC credits if "the operation of [Plaintiff's] trade or business [was] fully or partially suspended . . . due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(A)(ii)(I). Wolf Bay clearly meets this prong.

19. Eligibility under the "suspension test" under the CARES Act § 2301(c)(2) or I.R.C. § 3134(c)(2)(A)(ii)(I) contains no financial element whatsoever.

20. Indeed, the CARES Act § 2301(c)(2) and I.R.C. § 3134(c)(2)(A)(ii)(I) do not require eligible employers to have suffered any decline in gross receipts in order to qualify for ERC credits using the suspension test. Nor does the suspension test require the business to have been shut down completely during the pandemic.[9]

### Wolf Bay's Eligibility for the Credit

21. For 2020, Wolf Bay duly filed for and is eligible for the credits under the

---

[9] In fact, IRS Notice 2021-20 interprets a partial suspension to occur if the employer's operations continue but "are subject to modification due to a governmental order (for example, to satisfy distancing requirements), [then] such a modification of operations is considered to be a partial suspension of business operations due to a governmental order if the modification required by the governmental order has more than a nominal effect on the business operations under the facts and circumstances." *Guidance on the Employee Retention Credit under Section 2301 of the Coronavirus Aid, Relief, and Economic Security Act* IRS Notice 2021-20 *(Answer 17).*

6

"suspension" prong for all 2020 ERC quarters.

22. For Q1 2021, Wolf Bay duly filed for and is eligible for the credit under the "suspension" test and also under the gross receipts prong and alternative gross receipts test prong.

23. For Q2 2021, Wolf Bay duly filed for and is eligible for the credit under the alternative gross receipts prong and the "suspension" eligibility prong as well.

24. Despite Wolf Bay's ERC eligibility for all quarters claimed (either under the suspension test or gross receipts/alternative gross receipts test or both), the IRS has ignored these claims.

### The ERC Generally

25. Employers who qualify for the ERC in 2020 may receive a maximum tax credit of $5,000 per employee for all wages paid from March 13, 2020-December 31, 2020.[10] To assist employers even more in the pandemic, Congress widely expanded the program in 2021. For the first three quarters of 2021, the employer may receive an ERC of up to $7,000 per employee for each quarter in which they qualify.[11]

26. The amount of ERC is not limited to the amount of employment taxes the employers paid, and against which the credit is applied. Rather, if the amount of the credit exceeds the applicable employment taxes for the calendar quarter, "such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3); I.R.C. § 3134(b)(3).

### WOLF BAY LODGE, INC.

27. Wolf Bay Lodge, Inc., is a corporation that operates a full-service restaurant and gift shop for customers and patrons. Plaintiff's principal place of business is in Foley, Alabama.

---

[10] Coronavirus Aid, Relief, and Economic Security Act (CARES Act) §2301(a)(b)(1)(2).
[11] Consolidated Appropriations Act of 2020 (CAA), Pub. L. No. 116-260, §207(b).

28. Due to the pandemic and resulting governmental orders, beginning in March 2020, Wolf Bay had to undertake major changes to its operations. In 2020, Wolf Bay Lodge was in the business of operating a full-service restaurant and gift shop, both of which are located in the same building. Employees include servers, busboys, cooks, dishwashers, etc. The company also has maintenance workers, office personnel, and event and catering planning staff. The company has employees assigned to operate the gift shop as well.

29. The restaurant portion of the business generates the majority of the company's revenue.

30. In March 2020, Wolf Bay began experiencing disruptions to its operations which were caused by the pandemic and resulting governmental orders. Due to the pandemic and resulting governmental orders, the company was forced to implement takeout orders only and closed its gift shop on March 17, 2020. When the company offered take-out orders only, food items were limited due to decreased demand and staffing. Hours of operation were also reduced when the company utilized take-out orders only. Revenues decreased substantially during the period when the company only offered take-out orders.

31. When the company reopened in May 2020, sanitation efforts increased substantially, gloves and masks were worn by all employees, and the employees' temperatures were taken every day when they reported to work a shift. Government-mandated workplace restrictions had a more-than-nominal impact on the company's productivity and profitability. Government-mandated capacity restrictions also had a more-than-nominal impact on the company's productivity and profitability. Seating and tables were spaced 6 feet apart which severely reduced the capacity of the main restaurant area. These capacity and other restrictions continued through May 31, 2021. Due to these government-mandated restrictions, Wolf Bay saw

a substantial reduction in customers in 2020 and 2021 as compared to previous years and the orders caused a more than nominal disruption to Wolf Bay's operations.

32.     Additionally, many of the company's suppliers faced operational restrictions caused by government-mandated orders resulting in reduced supplies of goods. Wolf Bay was forced to search for alternative supplies. Wolf Bay experienced delays in sourcing needed supplies. These supply chain issues affected Wolf Bay's operations in a more than nominal way. In addition to reduced revenue, the company also had to incur extra expenses for PPE, paper, gloves, and sanitation supplies. Food and beverage supplies also increased in price.

33.     Restrictions due to government orders from an appropriate governmental authority had the effect of both fully and partially shutting down Wolf Bay and had a greater than nominal impact on Wolf Bay's productivity, revenue and operations.

34.     Because Plaintiff Wolf Bay's operations were partially suspended due to government orders that meet the statutory criteria for the claimed quarters in 2020 and 2021, Wolf Bay is entitled to its claimed ERC, plus interest and attorney fees and costs.

## Second Quarter 2020

35.     On or about September 14, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q2 2020. ("Q2 2020 Form 941-X").

36.     Line 18a of the Q2 2020 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $22,408.09.

37.     Line 26a of the Q2 2020 Form 941-X reported that Plaintiff's refundable portion of ERC was $113,785.63.

38.     Line 30 of the Q2 2020 Form 941-X reported $262,236.60 in qualified wages for

9

the ERC.

39. Line 31a of the Q2 2020 Form 941-X reported $10,150.83 in qualified health plan expenses for the ERC.

40. Based upon the foregoing, Plaintiff timely claimed an ERC for Q2 2020 in the amount of $136,193.72.

41. The IRS has not issued the ERC or a Statutory Notice of Claim Disallowance for Q2 2020.

### Third Quarter 2020

42. On or about September 14, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q3 2020. ("Q3 2020 Form 941-X").

43. Line 18a of the Q3 2020 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $33,075.72.

44. Line 26a of the Q3 2020 Form 941-X reported that Plaintiff's refundable portion of ERC was $25,397.50.

45. Line 30 of the Q3 2020 Form 941-X reported $113,321.61 in qualified wages for the ERC.

46. Line 31a of the Q3 2020 Form 941-X reported $3,624.83 in qualified health plan expenses for the ERC.

47. Based upon the foregoing, Plaintiff timely claimed an ERC for Q3 2020 in the amount of $58,473.22.

48. The IRS has not issued the ERC or a Statutory Notice of Claim Disallowance for Q3 2020.

**Fourth Quarter 2020**

49. On or about September 14, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q4 2020. ("Q4 2020 Form 941-X").

50. Line 18a of the Q4 2020 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $29,574.20.

51. Line 26a of the Q4 2020 Form 941-X reported that Plaintiff's refundable portion of ERC was $85,718.03.

52. Line 30 of the Q4 2020 Form 941-X reported $227,877.68 in qualified wages for the ERC.

53. Line 31a of the Q4 2020 Form 941-X reported $2,706.78 in qualified health plan expenses for the ERC.

54. Based upon the foregoing, Plaintiff timely claimed an ERC for Q4 2020 in the amount of $115,292.23.

55. The IRS has not issued the ERC or a Statutory Notice of Claim Disallowance for Q4 2020.

**First Quarter 2021**

56. On or about September 14, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q1 2021. ("Q1 2021 Form 941-X").

57. Line 18a of the Q1 2021 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $31,359.92.

58. Line 26a of the Q1 2021 Form 941-X reported that Plaintiff's refundable portion of

11

ERC was $260,286.56.

59.  Line 30 of the Q1 2021 Form 941-X reported $401,419.41 in qualified wages for the ERC.

60.  Line 31a of the Q1 2021 Form 941-X reported $15,218.41 in qualified health plan expenses for the ERC.

61.  Based upon the foregoing, Plaintiff timely claimed an ERC for Q1 2021 in the amount of $291,646.48.

62.  The IRS has not issued the ERC or a Statutory Notice of Claim Disallowance for Q1 2021.

## Second Quarter 2021

63.  On or about September 14, 2023, Plaintiff duly filed a Form 941-X, *Adjusted Employers Quarterly Federal Tax Return or Claim for Refund*, claiming the ERC for Q2 2021. ("Q2 2021 Form 941-X").

64.  Line 18a of the Q2 2021 Form 941-X reported that Plaintiff's nonrefundable portion of ERC was $30,696.85.

65.  Line 26a of the Q2 2021 Form 941-X reported that Plaintiff's refundable portion of ERC was $269,751.46.

66.  Line 30 of the Q2 2021 Form 941-X reported $414,399.55 in qualified wages for the ERC6.

67.  Line 31a of the Q2 2021 Form 941-X reported $14,812.32 in qualified health plan expenses for the ERC.

68.  Based upon the foregoing, Plaintiff timely claimed an ERC for Q2 2021 in the amount of $300,448.31.

69. The IRS has not issued the ERC or a Statutory Notice of Claim Disallowance for Q2 2021.

## CAUSES OF ACTION

70. Pursuant to I.R.C. § 7422, a taxpayer may file a civil action against the United States for the recovery of taxes after a claim for refund has been filed with the Secretary.

71. Pursuant to I.R.C. § 6532, no refund shall begin (a) prior to the expiration of six months from the date of filing the claim for refund, or (b) after the expiration of two years from the date the Secretary notifies the taxpayer that its claim has been disallowed.

72. Plaintiff satisfies each of these requirements.

73. Plaintiff qualified for the ERC in Q2 2020, Q3 2020, Q4 2020 under the suspension test and for Q1 2021, and Q2 2021 under both the gross receipts/alternative gross receipts test and the suspension test.

74. The IRS has not paid Plaintiff's ERC claims for Q2 2020, Q3 2020, Q4 2020, Q1 2021, and Q2 2021.

75. The IRS has not issued a Letter 105C notifying Plaintiff that any of its claims have been disallowed.

76. The IRS has ignored Plaintiff's claims.

77. Plaintiff's claims for Q2 2020, Q3 2020, Q4 2020, Q1 2021, and Q2 2021 have been pending for more than six months.

78. Plaintiff's Complaint herein is being timely filed as the refund claim has been pending for more than six months with the IRS.

79. Plaintiff is entitled to the full amount of ERC claimed, together with interests pursuant to I.R.C. § 6611, as well as reasonable attorney fees and legal costs associated with this

cause of action, pursuant to 28 U.S.C § 2412 and/or I.R.C. § 7430.

## Count One
## Q2 2020 Refund Claim

80. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

81. Plaintiff is an eligible employer qualified to receive $136,193.72 of ERC in Q2 2020.

82. On or about September 14, 2023, Plaintiff duly filed a Form 941-X claiming an ERC for Q2 2020 in the amount of $136,193.72.

83. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $136,193.72, along with statutory interest.

## Count Two
## Q3 2020 Refund Claim

84. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

85. Plaintiff is an eligible employer qualified to receive $58,473.22 of ERC in Q3 2020.

86. On or about September 14, 2023, Plaintiff duly filed a Form 941-X claiming an ERC for Q3 2020 in the amount of $58,473.22.

87. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $58,473.22, along with statutory interest.

## Count Three
## Q4 2020 Refund Claim

88. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

89. Plaintiff is an eligible employer qualified to receive $115,292.23 of ERC in Q4

2020.

90. On or about September 14, 2023, Plaintiff duly filed a Form 941-X claiming an ERC for Q4 2020 in the amount of $115,292.23.

91. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $115,292.23, along with statutory interest.

**Count Four**
**Q1 2021 Refund Claim**

92. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

93. Plaintiff is an eligible employer qualified to receive $291,646.48 of ERC in Q1 2021.

94. On or about September 14, 2023, Plaintiff duly filed a Form 941-X claiming an ERC for Q1 2021 in the amount of $291,646.48.

95. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $291,646.48, along with statutory interest.

**Count Five**
**Q2 2021 Refund Claim**

96. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

97. Plaintiff is an eligible employer qualified to receive $300,448.31 of ERC in Q2 2021.

98. On or about September 14, 2023, Plaintiff duly filed a Form 941-X claiming an ERC for Q2 2021 in the amount of $300,448.31.

99. Accordingly, Plaintiff is entitled to a refund of ERC in the amount of $300,448.31,

along with statutory interest.

## Count Six
## Attorney Fees and Administrative Costs

100. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

101. In addition to its refund and statutory interest, Plaintiff is also entitled to its administrative costs, including attorneys' fees.

102. The Defendant must pay reasonable litigation and administrative costs to a prevailing party unless its position in the proceeding was "substantially justified." I.R.C. § 7430(c)(4)(B).

103. Here, the Defendant's position was not substantially justified.

104. In failing to pay Plaintiff's 2020 ERC claims that were objectively due based upon the full or partial suspension of Plaintiff's operations as provided for in the clear language under I.R.C. § 3134, and for the 2021 quarters claimed, under the gross receipts test/alternative gross receipts test *and* the suspension test, the Defendant's position was not substantially justified.

105. Plaintiff's entitlement to the ERCs at issue is straightforward. The Defendant's refusal to promptly pay the ERC refund now past due is, therefore, not substantially justified.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against Defendant, the United States of America, for:

(A) A tax refund for Q2 2020 representing ERC in the amount of $136,193.72, with statutory interest thereupon;

(B)     A tax refund for Q3 2020 representing ERC in the amount of $58,473.22, with statutory interest thereupon;

(C)     A tax refund for Q4 2020 representing ERC in the amount of $115,292.23, with statutory interest thereupon;

(D)     A tax refund for Q1 2021 representing ERC in the amount of $291,646.48 with statutory interest thereupon;

(E)     A tax refund for Q2 2021 representing ERC in the amount of $300,448.31, with statutory interest thereupon;

(F)     Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and

(G)     All other relief as this Court deems necessary.

Respectfully submitted, this the 26th day of March, 2025.

        **WOLF BAY LODGE, INC.**

        */s/ E. J. Saad*
        E.J. SAAD     (ASB 8614D51E)
        MATTHEW ANDREWS     (ASB 1672E47A)
        JAMIE F. LEE     (PRO HAC)
        KEITH B. FRANKLIN     (ASB 8196A56K)
        *Attorneys for WOLF BAY LODGE, INC.*

OF COUNSEL:

E.J. SAAD LAW FIRM
6207 Cottage Hill Road, Ste. G
Mobile, AL 36609
Phone: (251) 660-0888
ejsaad@ejsaadlaw.com
mandrews@ejsaadlaw.com
jaimelee@ejsaadlaw.com
k.franklin@ejsaadlaw.com